Divina Chan on behalf of Fernando Velasquez-Bosque, may it please the court, I would like to reserve five minutes for rebuttal. The two issues I'd like to focus on today are one, whether the admission of the Wilson Declaration to establish a necessary element of the offense of violating 8 U.S.C. 1326 was harmless beyond a reasonable doubt, and two, whether carjacking in violation of California Penal Code Section 215 is a crime of violence. As to the latter issue, I've just handed to the clerk this morning a Supreme Court decision that was decided this morning. I don't expect that any of us have fully digested that case yet, but I would suggest to the court that perhaps we would defer submission of this matter until the parties have had an opportunity to file a supplemental briefing, because I think it has several relevant holdings for the purposes of this case. Turning to the confrontation clause violation first, there are two reasons that the introduction of the Wilson Declaration at trial, which the government concedes violates Mr. Velasquez-Bosque's right to confront the witnesses against him, is not harmless. The first is, without the declaration, the evidence at trial wasn't even sufficient to convict. A necessary element of a violation of 1326 is that the defendant lacked the consent of the Attorney General or the Department of Homeland Security Secretary to reapply for readmission. Without the Wilson Declaration, there was no evidence at trial of this. None. Now, Cervantes Flores seems to indicate, I understand, having read the briefs, that you want us to take a very technical reading of this language as to what Johnson testified to. We have this case, Cervantes Flores, which suggests that we don't take that technical reading of that language, that instead there's an overlap or that they're essentially reaching the same point. Why should we ignore Cervantes Flores on that issue? I'm not asking this Court to ignore Cervantes Flores. Cervantes Flores addressed the issue of whether it's the same thing for the Attorney General to consent to someone's readmission to the country or the Attorney General to consent for them to have permission to reapply for readmission to the country. And the reason why this Court held in Cervantes Flores that those two are functionally equivalent is that the Attorney General plays no role in consenting to readmission. The only thing the Attorney General, or now the Department of Homeland Security Secretary, can do is consent to allow the defendant to reapply for readmission. And if the Attorney General allows that, then the defendant, or the alien, excuse me, has to go to the State Department to get a visa. And that's how you actually get your consent to readmission. So in Cervantes Flores, which relied wholly on a Fifth Circuit decision, Sanchez-Millan, the Court said, well, they're really the same thing, because the Attorney General plays no role in consenting to admission. So when we say the Attorney General didn't consent to admission, what we mean is the Attorney General didn't consent to give him permission to reply for readmission. But isn't the argument the same, that there was absolutely no proof on that particular point, and the Court said it doesn't matter because they're essentially the same? But saying that the Attorney, that's true. But saying that the Attorney General didn't give him permission to be in the country is a different thing. Because the Attorney General, and now the Secretary of the Department of Homeland Security, has a lot of roles to play in terms of determining whether someone has the permission to remain in the country, to be in the country today, as opposed to being allowed to re-enter the country. So to say that the Attorney General's role is limited in the re-entry process, and therefore the fact that he consented to one is tantamount to his consenting to the other, is totally different from the role that the Attorney General or the DHS Secretary plays in terms of granting aliens permission to remain in or be in the country. And so the two are really not the same. I think that Cervantes-Flores is an interesting decision. I personally don't think it was rightly decided, but this Court can't and doesn't need to overrule it, because the evidence in this case was not. Agent Johnston did not testify that Mr. Velazquez-Bosque did not have permission of the Attorney General to be readmitted or re-enter the country. What he testified was there was no evidence that he had permission to be in the country, which is totally different from re-enter the country. And what the jury needed to find in order to convict Mr. Velazquez-Bosque was that he didn't have permission to either re-enter or reapply for readmission to the country. Whether he had permission to currently be in the country was not actually relevant to that question. Well, if he didn't have permission to re-enter, he wouldn't have had permission to be there either, it sounds like. That's true, but if he did have permission to re-enter, it still could be true that he didn't have permission to be in. So the fact that he didn't have permission to be in doesn't mean that he didn't have permission to re-enter. One can obtain permission to re-enter, and one can in fact re-enter and then not have permission to be in. For instance, if one's visa expired, or if one applied for adjustment of status and it was denied, or if one was deported again, all these things would make it so that you no longer have permission to be in the country. But they don't prove that you didn't have permission to re-enter the country. And in the context of this trial, was there any evidence or suggestion that those other factors were at play? There wasn't, but it's the government's burden to prove beyond a reasonable doubt. And the government didn't produce any evidence at all. The only evidence that the government produced was the Wilson Declaration. And they do that in every case. In every case they fight tooth and nail to get a declaration in that says, we've checked all the records and this alien did not have permission to re-enter the country or permission to reapply. And that is why this turns us to the second question, which is even if we were to say that a reasonable jury could infer from this discussion that we've been having and the other evidence in the record that Mr. Velazquez Bosque did not have the requisite permission, that is not the standard. The standard is not whether the evidence was sufficient under Jackson v. Virginia. The question is whether the error contributed to the verdict. In this case, the error surely contributed to the verdict because one, the government relied on this declaration in closing argument. They said, look at the declaration, it proves this element. Two, the government always relies on these declarations. That's why they, I think there were three separate motions to keep it out. And each time they said, you know, we can get it in. The reason they want to get it in is because they need it. And most importantly, the question is not whether we think Mr. Velazquez Bosque was guilty or whether we think the jury would have reached the same conclusion. The question is whether the government has proved beyond a reasonable doubt that the jury did not rely on that declaration. Whether the declaration contributed. Ms. Chen, Ms. Chen, this judge called over the question. So what again was the testimony by the agent who looked at the alien file? His testimony was that he had reviewed the A file and several databases. And they were the same databases that were at issue in the declaration. So we're not contesting that. And that there was no evidence that Mr. Velazquez Bosque had permission to be in the United States. He did not testify or he did not testify that there was no evidence that Mr. Velazquez Bosque did not have permission to reenter the United States or permission to reapply for readmission to the United States. And that is the element that is required to prove 8 U.S.C. 1326. You can be illegally in the country. But if you had permission to reenter the country, then you're not guilty of 8 U.S.C. 1326. It's true there was no evidence that he had permission to be in the country, to reenter the country. But it's the government's burden to prove that. It wasn't his burden to show that he had permission. It was the government's burden. And the only way they met that burden was through the admission of this declaration. So even if we could say, and I'm not conceding that we could, that a jury could have reasonably inferred based on Agent Johnston's testimony that Mr. Velazquez Bosque did not have permission to reapply for readmission, even if we could say that the jury could reasonably infer that, that's not the standard. The standard is whether this declaration contributed to the error, excuse me, the verdict. And I think without doubt it did. The government relied on it. It was the only direct evidence on the issue. They mentioned it in closing argument. And they raised it in every single 1326 case. I don't think that there's been a 1326 case where this type of declaration doesn't come in. So unless the court has any further questions on that issue, if I could turn to the second issue. And that's the question of whether a violation of California Penal Code 215, California Carjacking, is a form of violence. And on that issue, the Supreme Court decided a case this morning, which I think is really highly relevant. And although I suspect that most of us haven't really had a chance to thoroughly digest it, I would like to discuss it briefly because it really raises a lot of issues and it settles a lot of issues. And for me, it sort of negates what I filed in the Nieves-Medrano Supplemental Briefing that this court ordered. And the reason for that is that number one holding of Johnson, and I cited in my 28-J letter three relevant holdings. I should say first what the Supreme Court decided was that a Florida battery is not a crime of violence for the purposes of the Armed Career Criminal Act. And in reaching that conclusion, the first, I think, significant holding is that federal courts are bound by state court determinations regarding the elements of state offenses. In Nieves-Medrano, which is the case that this court asked for supplemental briefing on, the Ninth Circuit did not cite a single state case with regard to the definition of the elements of California Penal Code Section 215. They just compared the statutory language of 215 and Section 211, which is robbery. And all the briefing is about the cases. And the reason all the briefing is about the cases is because state courts determine what the elements of a state offense are, and Johnson makes perfectly clear that the federal court is bound not by a federal court's determination of what a state court's offense are, but the state court's determination is. Well, under Miller v. Gammey, we'd have to say there was some sort of irreconcilable difference between what the Supreme Court held in Johnson and what we held in Nieves. And can you point to what you see as being an irreconcilable difference? You know, there's a decision, and I can't remember the name of it. I think it might have been Ortega-Mendoza, but I could get that to the court in supplemental briefing. But the irreconcilable difference, I would say, is this, is Nieves-Medrano's reasoning is so spare. We have no idea what they did. And the United States Supreme Court in Johnson says you have to look at state court cases, excuse me, defining the elements of the offense. And Nieves-Medrano did not do that. Ms. Chen, it's Judge Gould. Let me just give you my understanding of Miller v. Gammey. That understanding is that you would have to show us that Johnson undermines that prior Ninth Circuit precedent by having irreconcilable language in it from the higher authority. It really doesn't matter if our prior Ninth Circuit panel was summary or didn't give good reasons. Our panel can't address that. We have to follow the prior precedent unless the standard of Miller v. Gammey is met. I understand. I guess I didn't really mean that it was summary and didn't give good reasons. I think what I meant was that in being summary and not giving good reasons, the panel relied solely on the statutory elements of the offense and did not look at all to California case law. And in Johnson, if you look at the statutory elements of the offense of battery, it involves the use of force. But the Supreme Court held that federal courts are bound by state court determination as to what that means. And the state court, the Florida Supreme Court, had held that the slightest touching would be sufficient. And California courts have held in the context of California Penal Code Section 215 that all sorts of things that we might not consider force or fear are sufficient. And the Nieves-Medrano Court did not address that. And so I would say that that is irreconcilable. If the Supreme Court says in Johnson you must look at and defer to state court definitions of the elements, and the Ninth Circuit doesn't look at state court definitions of the elements at all, just compares the statutory language, that's irreconcilable. Are you citing any cases other than Hill? I mean, Hill was the case you used in your case. In Magallanes. Which was an element of fear, right? I mean, the California court did find force and fear in both of those cases. Absolutely. Are there any other cases? No, those are the two cases on the line. And so in Magallanes, the definition of fear is not the same as the threat and use of force. So in order to meet the elements test for Section 15 or Section 2L1.2, there has to be either the use of force, the attempted use of force, or the threat and use of force. And the courts have basically said, well, fear is the same as the threat and use of force. But in Magallanes, what we see is that fear is not necessarily the threat and use of force. In that case, the defendant did not look at, engage, or threaten the victim at all. What he did was he tried to drive away in a car when she was trying to get her kid into the car seat. She pulled her kid out of the car seat, and she fell fear. But the defendant never even looked at her. He didn't engage her in any way. There are lots of ways to threaten. And you don't have to look at somebody and wave a stick at them. If you get in their car and commandeer it while they're trying to get their kid out of the back seat, I'm not sure that isn't pretty threatening. I'm not sure that that's intentionally threatening, to tell you the truth. And the California Supreme Court certainly didn't say that that was intentionally threatening. All the California Supreme Court said was, well, I think it was the California Court of Appeal, excuse me. All the California Court of Appeal said was that she felt fear. It did not say that the defendant implicitly threatened her or the defendant's actions constituted a threat to her or anything like that. What it said was she felt fear. And that that was the case. May it please the Court, Daniel Levin on behalf of the government. I'd like to get to the harmless heiress. Let me start with the Johnson case for a minute. We're happy to submit a supplemental brief if the Court likes, but I don't think it's necessary. And let me explain why. I don't think under Miller v. Gamey there's any irreconcilable difference with Johnson. With Johnson, the primary holding of Johnson and the question that was presented in Johnson was whether a battery offense, which under state law could be committed with the least touching, was a crime of violence under the elements test of Section 16A. And the Court held least touching is not violent in nature, and 16A requires that the force be violent in nature. But that's been the law of this circuit, at least going back to 1995, the case the defendant cites in her brief for this, the Grajada, excuse me, 2005. The Grajada case, I think it's Valencia v. Gonzalez case, which are cited in the briefs. Those hold in this circuit that the force has to be violent in nature. So all Johnson does is bring the rest of the country in the line with the law of this circuit on that point, that this Section 16 force needs to be violent. So I don't think it changes much in that respect in terms of whether it casts any doubt on Nieves-Medrano. And the other point that the defendant was talking about in the letter, that when performing a Taylor analysis, you need to look to state law for the elements, that's been federal law forever. The state courts are the interpreters, the privileged interpreters of state law. I don't think that's a controversial question. I don't think it was the Supreme Court says it in the Johnson opinion. I don't think they were overruling anything or changing anything when they said it. Now taken at a more general level, Johnson suggests that when we use the word force in conjunction with violent felony, then the force has to be violent. And I take it that the argument of opposing counsel is that California has interpreted carjacking as permitting nonviolent force, if you could call it that. Is that affected by Johnson? I don't think so. I don't think it's affected by Johnson because Grajada had said that before Nieves-Medrano, force has to be violent in nature. And I think that's the same thing. It rejected the idea that a least touching could be the use of force. The Hill case and the Magellanes case I don't think are inconsistent with the finding that there was violent, the force is violent in nature. The Magellanes case, it's a threat of force case. And I think what the Court of Appeals is holding there, and they start out by saying a threat can be implicit. And they cite the Flynn case, which is a California robbery case for that proposition. And then they go on to explain the circumstances, which is the defendant got into the car, started to fiddle with the ignition trying to get it into gear, while the defendant is with her putting her child into the car seat in the back. Implicit in that conduct is a threat, and that's why it was sufficient use of fear. It's not that the defendant subjectively was apprehensive, because it's not the subjective belief of the defendant, because that would be inconsistent with the Hill holding. The Hill holding is that you don't look subjective understanding, and that's why the baby can be a victim of carjacking, because you look at the circumstances, is there a threat? It could be express, if you don't get out of the car I'll shoot you. It could be implicit, brandishing a gun, brandishing a knife. It could be implicit in the action of jumping into the car while the baby is in it, or the child is in it, and starting to put it in gear. That is an implicit threat that force could be used. So I think that's why Magellanus is consistent with the elements approach. But in any event, Nevis Medrano resolves the section 16 question, and there's really nothing more to say on it, because I don't think Johnson undermines Nevis Medrano in any way, and I think Nevis Medrano, for the reasons we set out in our supplemental brief, resolves the 2L issue as well, because it says Vestal Lopez controls, and Vestal Lopez itself is a 2L case. So I think on the crime of violence issue, Nevis Medrano really is the end of the story. And if the court wants me I can get into all the gruesome details, but otherwise I'll turn to the harmless heirs. Counsel, Judge Gould, I don't know what the other panel members will want to do, but my preference is going to be to issue an order that permits you and Ms. Chen to file a supplemental brief fairly promptly on Johnson. We're happy to do so, Your Honor, if the court would like that. Could you at some point in your argument, just please be sure that you address the distinction argued by Ms. Chen between a witness saying this person doesn't have a right to be here and a witness saying this person was never given permission to reenter? Absolutely. Let me turn to that now, the harmless heir issue. What the defendant's argument boils down to is really one word. There really is only a one-word discrepancy between the declaration, which we've admitted was introduced in error in light of Melendez-Diaz, and the testimony. And the declaration says no permission for readmission, and the testimony said no permission to be in. And I don't think that there's any real distinction between those two pieces of evidence. Permission, as the court made clear in Cervantes Flores, relying on Sanchez-Milan. There's no functional difference between permission to come back into the country and the technical requirement of the statute, which the jury was correctly instructed on, permission to apply for reentry. And there's no distinction between permission for readmission and permission to be in, because, of course, permission for readmission under the Cervantes Flores approach is tantamount to permission to be in the country. There really are the same thing. And I don't think the court should be concerned that, absent the one-word difference, the jury would have reached a different verdict. And I think what the court said in Norwood last month, or a couple weeks ago actually, was if, disregarding the improperly admitted evidence, you'd be convinced beyond any reasonable doubt that the jury would have reached the same result, then the error is harmless. And I think when you look here, it wasn't just the testimony, but it was also the I-212 denial, which I think by itself is powerful evidence that there was no permission granted to reapply, because the I-212 rejects that permission. Jury hears about it, sees the denial. They don't see any other evidence that there was any other I-212. It's not like an FDIC certificate, because that's a piece of insurance where you have to keep renewing it. You have to keep paying your insurance premiums to keep your insurance active. Not true with an I-212. If you do nothing, if the I-212 is denied and you do nothing, you have no permission. Permission doesn't just creep up by itself. There needs to be an active grant of it. There is no active grant, and I think the jury can take it. In fact, this is what the government argued in closing. It's still incumbent on the government, though, to prove that there has been none. That's correct. Of course the government has the burden, but if the government can meet its burden, and I think the Blanco-Galegos case showed the government met its burden by introducing the I-212 denial and saying there's nothing else. So I think the way it adds up here is the jury heard about the I-212 denial. It heard the testimony of Agent Johnson that I've looked in the databases, I've looked in the A file, there's no permission to be in, and then it saw the declaration which said I've looked in the databases, I've looked in the A file, and there's no permission for readmission. So really what it comes down to is the one-word difference, in versus readmission. That's the only thing that the declaration added on top of this, and it wasn't really what the government argued in closing. It wasn't the linchpin of the government's argument here. The government, in closing, started out with the I-212, showed it to the jury, said he applied for this, and it was rejected. Then the prosecutor talked about Agent Johnson's testimony, then he mentioned the declaration. So all of it was argued to the jury. It wasn't just look at the declaration, look at the declaration. That wasn't sort of what the government's case rested on. And I think when you step back, when you look at the factors that are set out in Delaro versus Van Arssel for harmless error analysis, you look at what was this testimony cumulative? Was there either corroborated testimony or contradictory testimony? No contradictory testimony here. What was the overall strength of the case on this point? It was strong on this point. It wasn't even in dispute, really. There was no argument about this point at trial. So I think, looking at it all together, I think this Court should be convinced, beyond a reasonable doubt, that the error was harmless. If the Court doesn't have anything else, I would prefer to submit. I have a question for you, counsel. Now, has the government taken the position in all of its cases that an introduction of a certificate of non-record does violate the Confrontation Clause in light of the Melendez case? It's my understanding that that is the position of the government in these cases, that when the declaration is prepared for purposes of the litigation, there's a Melendez-Diaz, there's a Confrontation Clause issue under Melendez-Diaz, that's different from a public record that was not prepared for the purpose of the litigation. That I don't think would be covered by the Confrontation Clause. Okay, so unlike a warrant of removal that's not prepared for the litigation, this CNR is prepared specifically for purposes of the litigation after he's been indicted? That's correct. As a practical matter, a request goes to the agency to do a database search, essentially, and they prepare the declaration. So it's very different from a warrant of removal, which is obviously prepared in the normal course. Okay, but then it does sort of create a crisp, harmless error issue, because the government's saying there is an error, and then you have to be able to answer adequately Ms. Chen's argument, which is, at least as I understood it, okay, maybe he was denied on some occasion, but still he could have gotten some permission that we're not aware of, and then the witness who gave a statement is just saying he doesn't have a right to be here, not that he didn't have a right to enter. So I guess in theory she's saying he could have gotten permission to enter, and then entered and then done some crime or something that would make him deportable, so he no longer has a right to be here, but he had a right to enter. That's her argument, right? That's how I understand the argument. I just think it's not correct, because I think permission to be in really is the same. The same for these purposes is permission for reentry, because ultimately it's not up to the attorney general. Well, let me put it this way. The attorney general gets to make the determination about consent to apply for readmission, and what the court said in Cervantes Flores is, we don't get down in the nitty-gritty of the wording on these things, because the attorney general doesn't get to grant visas. It's okay if the testimony is no permission to come back to the United States, and I think no permission to be in the United States really is the same thing. It's the same effect, because if you don't have permission to come back, you don't have permission to be in either. So I think a permission to be in may be somewhat broader, but it certainly covers this scenario, and that's why I think the error is harmless, particularly when you look at it in conjunction with the I-212 denial. Now, it may be that the I-212 denial, standing alone, there still could be that possibility that the agency would have turned around and reversed itself. Now, it wouldn't have, because he was ineligible because of the aggravated felony, but that possibility could still, I suppose, be out there in ether, but I think that the database testimony from Agent Johnson pretty much eliminates any doubt that it would still be lingering after you saw the I-212 evidence. Okay. I guess that answers my question. I'm still struggling with whether there's any specific precedent that would give some comfort that the be-in language could be interpreted on a non-technical, practical sense basis, as you're arguing, because, of course, we have to say it's harmless beyond a reasonable doubt under Chapman, I think, right? I agree with that, Your Honor. The precedent that I point you to is Cervantes Flores, the Sanchez-Malam case, and then the cases that have taken a sort of non-technical approach, the Blanco-Galagos case, the Flores-Villar case, all of which involve testimony that doesn't precisely track the wording of the statute, and all of which the Court has said that's okay, we don't take this hyper-technical approach. So I think all of those cases, and they're cited in our brief, are supportive of a finding of harmless error here. Okay, thank you. Thank you, Your Honor. Thank you. We can give you a minute for rebuttal. I would just say that none of the cases that the government cited address the be-in language at all. They all address this question of whether the Attorney General's not giving permission to re-enter is sufficient. And the reason why that's significant is because the element of the offense is the permission to reapply. It is not the be-in language. And on that issue, Norwood is wholly distinguishable, because in Norwood the Confrontation Clause violation was the admission of a declaration that didn't even go to an element of the offense. It was considered a not particularly important fact in that case. And that was the linchpin of that case. The evidence that was improperly admitted was not important and wholly cumulative. In this case, the evidence that was improperly admitted was the only evidence that went directly to an essential element of the offense. It was not cumulative. It was seriously improper. Counsel, what is kind of your best argument that there's a practical scenario that could have happened that it's not remote that he was given permission to enter and then later had no right to be in? I guess my best non-ridiculous argument would be the Attorney General does, or the Department of Homeland Security does have the authority to give people permission to re-enter the country, even if they have aggravated felonies, for all sorts of humanitarian reasons, et cetera. And so he could have been given permission to re-enter the country on a limited basis, and then he could have stayed. And there would then be no evidence in his files that he had the permission to be in the country because the permission to re-enter was limited. And then he overstayed that permission. And so that's my best case. But it's really not our burden. The government bore the burden of proving that he did not have permission to reapply for readmission, and they only had one piece of evidence that showed that, and that piece of evidence was improperly admitted. Could an agent testify that I've looked through these records and I see there's nothing in here where the Attorney General gives them permission to be in this country. Could that agent so testify if, in fact, there was a permission to apply for re-entry in the record? I believe he could because if the Attorney General had given permission to reapply for readmission and the person had, in fact, obtained a visa or maybe didn't obtain a visa and was in the country, there would be nothing in the record that gave the alien permission to be in the country. If he didn't have a visa, he would not have permission to be in the country. But that's the issue that we... But that visa, of course, isn't the permission of the Attorney General. Exactly. So then if he did have a visa, but it was a limited visa, and he was allowed to re-enter for whatever humanitarian purposes,  an agent would be honestly testifying, there is nothing in this file that gives him permission to be in the country because the permission was limited and he overstayed that. Thank you. The Court has no further questions. Okay. We'll defer submission of Velazquez-Bosquet until we consider the potential for supplemental briefing. Thank you. Our next case is Manassian v. Holder. Can you give me Colleen's comment? She can't hear this morning. Yeah. Okay.
judges: Canby, Gould, Ikuta